# UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | |
|---|---|
| DONALD R. AXTELL, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| vs. ) | Case No. 11-0747-CV-W-HFS-P |
| ) | |
| DAVE DORMIE, et al., ) | |
| ) | |
| Respondents. ) | |

## OPINION AND ORDER DENYING PETITION FOR HABEAS CORPUS AND DENYING THE ISSUANCE OF A CERTIFICATE OF APPEALABILITY

Petitioner, Donald Axtell, filed this pro se habeas corpus petition pursuant to 28 U.S.C. § 2254 on July 25, 2011, seeking to challenge his 2007 convictions and sentences for one count of sodomy, two counts of first-degree statutory sodomy, and one count of statutory rape, which were entered pursuant to a guilty plea in the Circuit Court of Buchanan County, Missouri.

The petition raises two grounds for relief: (1) that plea counsel was ineffective in not explaining to petitioner what "a straight up plea was," in that petitioner thought he would receive a sentence of 20 years, not 198 years; and (2) that petitioner was deprived of due process or other fundamental rights during the plea proceedings, because he was not provided a listening device so that he could hear the proceedings. Respondent contends that both grounds are procedurally defaulted and lack merit.

## SUMMARY OF THE FACTS

On appeal from the denial of petitioner's Mo. Sup. Ct. 24.035 motion, the Missouri Court of Appeals summarized the facts as follows:

> On March 16, 2007, [petitioner] was charged by information with two counts of sodomy, § 566.060, n.1 two counts of statutory sodomy in the first degree, §566.062, one count of rape, §566.030, and one count of statutory rape in the first degree, § 566.032. On April 10, 2007,

[petitioner] entered a guilty plea before the Honorable Daniel F. Kellogg in the Circuit Court of Buchanan County, Missouri. The State dismissed one count of sodomy and the count of rape, and [petitioner] pled guilty to the remaining counts.

> n.1 All statutory references are to RSMo 2000, as updated through the 2010 cumulative supplement, unless otherwise noted.

At the guilty plea hearing, [petitioner] admitted that between September 1, 1992, and May 1, 1993, he touched the vagina of A.A. with his hand, that A.A. was less than fourteen years old, and that [petitioner] was not married to A.A. [Petitioner] further admitted that between June 1, 1999, and August 31, 1999, he had sexual intercourse with A.A. and that A.A. was less than fourteen years old. [Petitioner] also admitted that between June 1, 1999, and August 31, 1999, he had deviate sexual intercourse with A.A. who was less than fourteen years old. Finally, [petitioner] admitted that between September 1, 2000, and December 31, 2000, he engaged in deviate sexual intercourse with A.A. who was less than fourteen years old.

[Petitioner] stated that there were no threats or promises to induce his plea of guilty. He acknowledged that he was pleading guilty pursuant to an agreement with the State whereby the State would dismiss counts one and two of the amended information, and [petitioner] would "plead straight up" to the remaining four counts. [Petitioner] acknowledged that the plea agreement provided for a sentencing assessment report and that the State would not file any other charges. The court found that the plea was knowing and voluntary and accepted it.

[Petitioner]'s sentencing hearing took place on May 22, 2007. At the sentencing hearing, three young women testified that [petitioner] had either touched them in a sexual manner or had sexual intercourse with them when they were as young as three to five years old. A.A. testified that [petitioner] began touching her in a sexual manner when she was five years old and that the contact escalated over the years to a point where [petitioner] was regularly forcing her to have sexual intercourse with him by the time she was a young teen. When A.A. was sixteen, she became pregnant and later found out that [petitioner] was the father of the child. The young women also testified that [petitioner] had made a threatening gesture to them by running a finger or thumb across his throat at an earlier hearing in order to intimidate them.

The State asked the sentencing court to sentence [petitioner] to life

> sentences on each of the counts to which he pled guilty and for the sentences to run consecutively to each other. [Petitioner]'s defense counsel asked the sentencing court to sentence [petitioner] to fifteen years, asking for the court to consider as mitigation [petitioner]'s willingness to plead guilty, stating, "He knew that you could basically sentence him to some horrendous thing on each of these four counts, so he was a man of some courage."
>
> [Petitioner] himself addressed the court, requesting leniency. He stated that he could "remember doing none of this because [of] alcohol and drugs." [Petitioner] also reported being abused himself when he was in the fifth and sixth grade. He asked the court to sentence him to probation, and stated, "If I get prison, see if I can get a 120-day callback."
>
> The court sentenced [petitioner] to ninety-nine years on each of the three sodomy counts, sentences to run concurrent to each other, and ninety-nine years on the count of statutory rape, which was to run consecutively to the other three sentences. The court stated, "Sir, I don't want you to ever get out of prison. I don't want you to be a part of your son's life. I don't want you to be a part of any child's life."

(Respondent's Exhibit E, pp. 3-5).

Before the state court findings may be set aside, a federal court must conclude that the state court's findings of fact lack even fair support in the record. Marshall v. Lonberger, 459 U.S. 422, 432 (1983). Credibility determinations are left for the state court to decide. Graham v. Solem, 728 F.2d 1533, 1540 (8th Cir. en banc 1984). It is petitioner's burden to establish by clear and convincing evidence that the state court findings are erroneous. 28 U.S.C. § 2254 (e)(1).[1] Because the state court's findings of fact have fair support in the record and because petitioner has failed to establish by clear and convincing evidence that the state court findings are erroneous, the Court defers to and adopts those factual conclusions.

---

[1] "In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

-3-

## PROCEDURAL DEFAULT

Petitioner's first ground for relief is that plea counsel was ineffective because counsel inadequately advised him as to the consequences of his plea. Petitioner's second ground for relief is that he could not hear a substantial part of the proceedings. Respondent correctly notes that both of these grounds are procedurally defaulted.

In Coleman v. Thompson, 501 U.S. 722 (1991), the Supreme Court held:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

Id. at 750. Cause, actual prejudice, and the probability of a "fundamental miscarriage of justice" are to be judged under criteria set out in Wainwright v. Sykes, 433 U.S. 72 (1977), and Murray v. Carrier, 477 U.S. 478 (1986). Coleman, 501 U.S. at 748-50.

A review of the record shows that petitioner defaulted ground 1 by not raising it in his original Mo. Sup. Ct. Rule 24.035 motion. (See Respondent's Exhibit B, pg. 16). As the Missouri Supreme Court has stated, "in all but the most exceptional circumstances, if the defendant fails to raise such claims in post-conviction proceedings, the defendant waives them and cannot raise them in a subsequent petition for [state] habeas corpus." State ex rel. Green v. Moore, 131 S.W.3d 803, 805 (Mo. 2004) (en banc) (internal quotation and citation omitted).

Petitioner attempted to bring his first ground for relief (that counsel was ineffective in not telling him what a "straight up plea was") on appeal of the denial of his Rule 24.035 motion. The Missouri Court of Appeals found that he had waived the claim on appeal. Specifically, the Court of Appeals stated: "Where, as in this case, a claim was not made before the motion court, the motion

court could issue no relevant findings and conclusions on the claim, and there is, therefore, nothing for us to review." (Respondent's Exhibit E, pg. 5). Petitioner defaulted ground 1 by not bringing it in his original Rule 24.035 motion.

Unlike ground 1, ground 2 was brought in petitioner's original Rule 24.035 motion. (Respondent's Exhibit B, pg. 16). However, ground 2 was not brought on appeal of the denial of petitioner's Rule 24.035 motion. (See Respondent's Exhibit C). Therefore, it too was defaulted by not being fully presented in the state courts.

Because both of petitioner's grounds for relief are procedurally defaulted, they may not be reviewed by this Court unless petitioner can demonstrate cause and actual prejudice, or that failure to consider his claim will result in a fundamental miscarriage of justice. Coleman, 501 U.S. at 750 (1991). The Court will not reach the "prejudice" component of the analysis unless it first finds that the petitioner has demonstrated "cause" for his procedural default. However, petitioner has failed to do so.

Even though petitioner has failed to demonstrate cause (and, therefore, we do not consider prejudice) for his procedural default, the Court can still reach the merits of his claims if he can show that he is "probably actually innocent" of the crimes for which he was convicted. Bowman v. Gammon, 85 F.3d 1339, 1346 (8th Cir. 1996), cert. denied, 520 U.S. 1128 (1997). To demonstrate his innocence, petitioner must satisfy a two-part test: First, he must support his allegations of constitutional error "with new reliable evidence . . . that was not presented at trial." Second, he must establish "that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence." Id. (citing Schlup v. Delo, 513 U.S. 298 (1995)). However, nothing in the record shows that petitioner is probably actually innocent.

Petitioner has failed to show cause for both of his grounds for relief. He also has failed to meet

the Schlup standard for actual innocence. Id. Therefore, federal review of these grounds is not required to prevent a fundamental miscarriage of justice. Murray v. Carrier, 477 U.S. at 495.

## ALTERNATIVE MERITS ANALYSIS

Even if this Court were to reach the merits of petitioner's grounds for relief, it would still deny the petition. In his first ground for relief, petitioner claims that he was not advised as to the consequences of his plea deal. The Missouri Court of Appeals, addressing this ground *ex gratia*, held as follows:

> However, even if [petitioner] had included in his motion the claim that his failure to understand the phrase "plead straight up" rendered his plea involuntary because he believed that an agreement to a twenty-year sentence was in place, the record would refute his claim. At [petitioner]'s sentencing, after the State had argued for consecutive life sentences on each remaining count to which [petitioner] had plead guilty, [petitioner] did not object to the State's argument claiming that there was a contrary agreement in place. On the contrary, [petitioner]'s own counsel requested a sentence of *fewer* than twenty years, requesting leniency in consideration for [petitioner]'s voluntary plea. In addition, that [petitioner] knew the court was free to sentence him as it saw fit is reflected by defense counsel's argument in support of leniency, "He knew that you could basically sentence him to some horrendous thing on each of these four counts, so he was a man of some courage." Finally, [petitioner] himself asked the court for probation or "[i]f I get prison, see if I can get a 120-day callback." All of this is inconsistent with [petitioner]'s claim that he understood the plea agreement to include a sentence of twenty years.

(Respondent's Exhibit E, pp. 5-6). It is clear from the record that petitioner knew that he had not been given a deal of 20 years. Rather, he knew that the Buchanan County Circuit Court had the authority to sentence him as it found proper. Ground 1 is without merit.

In ground 2, petitioner claims that he could not adequately hear the proceedings. This is a slightly different claim than the claim raised in petitioner's Rule 24.035 motion in the Circuit Court. There, he claimed that counsel was ineffective for not getting a listening device for him, so that he

-6-

could better hear the proceedings. (See Respondent's Exhibit B).

Regardless of how ground 2 is construed, it is without merit. It is clear from the Missouri Court of Appeals' factual findings that petitioner's plea hearing was not unduly impeded by his being hard of hearing. (See Respondent's Exhibit E, cited *supra*). Rather, petitioner understood the proceedings and was able to answer the questions given him by the Circuit Judge.

Additionally, this Court's independent review of the plea colloquy reveals that when petitioner did have difficulty hearing a question, he would say "excuse me." (See Respondent's Exhibit F). After petitioner said "excuse me," the Circuit Judge would repeat the question to petitioner to make sure that he understood it. As an example, here is a short excerpt from the plea colloquy:

> Q. [Circuit Judge]: And is pleading guilty today what you want to do?
>
> A. [Petitioner]: Excuse me.
>
> Q. [Circuit Judge]: Pleading guilty is what you want to do?
>
> A. [Petitioner]: Yes, sir.
>
> Q. [Circuit Judge]: All right. You understand you have a right to a trial?
>
> A. [Petitioner]: Yes, sir.
>
> Q. [Circuit Judge]: You understand how a jury trial works?
>
> A. [Petitioner]: Excuse me.
>
> Q. [Circuit Judge]: You understand how a jury trial works?
>
> A. [Petitioner]: Yes, sir.

(Respondent's Exhibit F, pp. 3-4). The Circuit Court made sure that petitioner understood the plea hearing, and that petitioner's plea was knowing and voluntary. Ground 2 is without merit, and the case will be dismissed, with prejudice.

## CERTIFICATE OF APPEALABILITY

Under 28 U.S.C. § 2253(c), the Court may issue a certificate of appealability only "where a petitioner has made a substantial showing of the denial of a constitutional right." To satisfy this standard, a petitioner must show that a "reasonable jurist" would find the district court ruling on the constitutional claim(s) "debatable or wrong." Tennard v. Dretke, 542 U.S. 274, 276 (2004). Because petitioner has not met this standard, a certificate of appealability will be denied. See 28 U.S.C. § 2254, Rule 11(a).

## ORDER

Accordingly, it is **ORDERED** that:

(1) the above-captioned petition for a writ of habeas corpus is denied;

(2) this case is dismissed with prejudice; and

(3) the issuance of a certificate of appealability is denied.

      /s/ Howard F. Sachs  
HOWARD F. SACHS  
UNITED STATES DISTRICT JUDGE

Kansas City, Missouri,

Dated: December 27, 2011.